**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PETER C. HANSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:10-cv-00110-RCJ-VPC |
| vs. ) | |
| ) | |
| MARK MALLOY, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

This case arises out of the work assignments and five-day suspension of a highway patrolman, allegedly in unlawful retaliation for protected speech. Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 29). For the reasons given herein, the Court grants the motion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Peter C. Hansen is a highway patrolman for the Nevada Department of Public Safety ("NDPS"). (Am. Compl. ¶ 2, Mar. 12, 2010, ECF No. 6). In December 2007, Plaintiff received a poor evaluation report. (*Id.* ¶ 4). He filed an internal grievance that he alleges constituted speech on a matter of public concern because it involved his criticism of the way his superiors evaluated a public employee (himself). (*See id.* ¶¶ 4–5). Plaintiff was soon thereafter reassigned "from commercial to traffic," and later to Elko, which he viewed as a "demotion," although his pay and benefits were apparently not altered. (*See id.* ¶¶ 6–7).[1] In December 2008,

---

[1] Involuntary reassignment can constitute cognizable retaliation so long as it could discourage protected activity under the circumstances, although it is not clear what damages

1  Plaintiff received another poor evaluation report, as well as a written reprimand, over which
2  Plaintiff filed another grievance that he alleges constituted speech on a matter of public concern
3  for the same reason the first grievance did. (*See id.* ¶¶ 9–10).  Soon thereafter, Plaintiff was
4  charged with "incompetence, willful disobedience and insubordination," and was suspended for
5  five days for incompetence pursuant to an agreement reached during appeal. (*See id.* ¶¶ 11–12).

6  Plaintiff sued Defendant Mark Malloy (the NDPS employee responsible for the alleged
7  adverse actions against Plaintiff) and the State of Nevada in this Court.  The Amended
8  Complaint ("AC") lists only Malloy as a Defendant and lists a single claim pursuant to 42 U.S.C.
9  § 1983 for retaliation in violation of the First Amendment.  Defendant has moved for summary
10 judgment.

**II.    SUMMARY JUDGMENT STANDARDS**

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

---

Plaintiff would claim in this case. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70–71 (2006).

1  (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears
2  the burden of proving the claim or defense, the moving party can meet its burden in two ways:
3  (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2)
4  by demonstrating that the nonmoving party failed to make a showing sufficient to establish an
5  element essential to that party's case on which that party will bear the burden of proof at trial.
6  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden,
7  summary judgment must be denied and the court need not consider the nonmoving party's
8  evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

9  If the moving party meets its initial burden, the burden then shifts to the opposing party
10 to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*
11 *Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing
12 party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
13 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
14 versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d
15 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment
16 by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v.*
17 *List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions
18 and allegations of the pleadings and set forth specific facts by producing competent evidence that
19 shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

20 At the summary judgment stage, a court's function is not to weigh the evidence and
21 determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477
22 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are
23 to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely
24 colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.
25 ///

### III.    ANALYSIS

In order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took "adverse employment action"; and (3) that his or her speech was a "substantial or motivating" factor for the adverse employment action.

*Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Not all speech is protected, however. "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 718 (9th Cir. 2009) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006)). The Supreme Court has recently reiterated the standard:

> When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). If an employee does not speak as a citizen, or does not address a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Ibid.* Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged. Courts balance the First Amendment interest of the employee against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).

*Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011); *see also id.* at 2500–01 (holding that the analysis under the Petition Clause mirrors the analysis under the Speech Clause). Analysis of a First Amendment retaliation claim consists of:

> a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Desrochers*, 572 F.3d at 708–09 (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). If the speech did not touch on a matter of public concern, the inquiry ends. *See id.* at 709.

Plaintiff bears the burden of showing that his speech addressed an issue of public concern, based on "the content, form, and context of a given statement, as revealed by the whole record." *See id.* (quoting *Connick*, 461 U.S. at 147–48). "[T]he essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest." *Id.* (citing *Connick*, 461 U.S. at 147).

Here, it appears beyond dispute that Plaintiff's concern was over the way Malloy evaluated Plaintiff's performance and disciplined him, not over any supposed effect Malloy's evaluations had on the public at large or on the policies of NDPS as they related to that department's service to the public. For example, the January 2008 grievance is clearly focused on particular elements of Plaintiff's performance evaluation of December 4, 2007 and whether the performance standards were fairly applied to him. (*See* Grievance, Jan. 3, 2008, ECF No. 34-7). The December 2008 grievance is likewise focused on particular elements of Plaintiff's performance evaluation of December 7, 2008. (*See* Grievance, Dec. 22, 2008, ECF No. 34-3). The final line of the December 2008 grievance confirms its personal focus: "**I don't have a problem with *my performance* being measured with a measuring stick.  I just need to know what the measuring stick is, and know that it will not change.**" (*Id.* at Bates 000138, ECF No. 34-3, at 9 (bold text in original, italics added)). Nowhere in either grievance does Plaintiff complain of deleterious effects of any policies on any other troopers or the public.

In summary, both grievances are internal complaints within NDPS concerning the application of job performance standards to Plaintiff. Plaintiff provides no evidence that he ever brought the practices he opposed, i.e., the alleged use of vague or improper evaluation standards, to the attention of his state legislators, the governor, the press, or any other external audience. He attests only that he called "Chief Perry," an internal supervisor, about the situation. (*See* Hansen Decl., Jan. 20, 2011, ECF No. 36-1). Under these circumstances, the Court cannot say that Plaintiff's complaint was on a matter of public concern under the *Connick* line of cases.

1  Rather, this was precisely the type of internal employee grievance that does not qualify as a
2  matter of public concern. *See Guarnieri*, 131 S. Ct. at 2501 ("A petition filed with an employer
3  using an internal grievance procedure in many cases will not seek to communicate to the public
4  or to advance a political or social point of view beyond the employment context."); *Desrochers*,
5  572 F.3d at 710.  An internal grievance concerning an employee's particular situation does not
6  automatically constitute speech on a matter of public concern simply because the public might be
7  interested in how government officers are performing their duties. *Id.*  "The right of a public
8  employee under the Petition Clause is a right to participate as a citizen, through petitioning
9  activity, in the democratic process.  It is not a right to transform everyday employment disputes
10 into matters for constitutional litigation in the federal courts." *Id.*

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 29) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment in favor of Defendant and close the case, accordingly.

IT IS SO ORDERED.

Dated this 26th day of July, 2011.

_____
ROBERT C. JONES
United States District Judge